## COLYAR v. SAX.

### (Nashville.    February 8, 1893.)

1. ABANDONED "BOOM" TRANSACTION. *Rights of parties.*

Several persons united in a scheme to purchase and develop a body of mineral lands. It was developed, after several thousand acres had been purchased, that the original promoters had not the necessary funds to "float" the scheme, and other parties were, from time to time, admitted "upon the ground floor," and advanced the required funds. Some of these took specific and defined interests in the transaction; others did not. Titles were taken in the name of one or more of the original promoters, but after some 12,000 acres had been secured, the entire body of lands was conveyed to a trustee for the benefit of all parties interested. Subsequently other lands—11,000 acres—were purchased by part of those interested in the original purchase of 12,000 acres, others declining to enter into the last purchase. The 11,000 acres was likewise conveyed to the same trustee. At this point the scheme was abandoned by common consent, and suits brought to have the rights of the parties declared, and the lands sold and their proceeds distributed.

*Held:* None of the lands reverted to the original promoters by way of resulting trust; but the transaction should be settled upon principles applicable to a partnership, by dividing the net proceeds of the two purchases among those interested in each, giving each person the specific interest he contracted for, or, in the absence of such contract, then an interest in proportion to the advancement in money and services made by each.

2. SAME. *Same.*

And if any of the joint purchasers who contracted to take a specific interest in the land, has failed to pay his proportion of the purchase-price, the deficit should be made good out of his share of the proceeds of sale.

Cases cited and approved: Gee v. Gee, 2 Sneed, 395; Rankin v. Black, 1 Head, 658; Williams v. Love, 2 Head, 84; Furman v. McMillian,

2 Lea, 121; Pearl *v.* Pearl, 1 Tenn. Ch., 207; 19 Am. Rep., 735; 50 Am. Rep., 727.

---

FROM GRUNDY.

---

Appeal from Chancery Court of Grundy County. T. M. McCONNELL, Ch.

J. H. HOLMAN & CARTER for E. F. Colyar.

VERTREES & VERTREES for Duncan.

PERCY D. MADDIN for N. B. Spears.

N. COHN for Sax.

BROWN & SPEARS, STEGER, WASHINGTON & JACKSON for W. D. Spears.

JOHN A. PITTS and W. C. SHELTON for A. S. Colyar.

J. C. BRADFORD for Richardson, Mason & Co.

J. B. FERGUSON, guardian ad litem.

WILKES, J.   The first-named bill was filed to cancel certain deeds made by E. F. Colyar to Max Sax, trustee, etc., and set up in favor of E. F. Colyar a resulting trust in the lands conveyed. The second bill was filed to sell the same lands

for partition, to fix the rights of parties therein, and divide the proceeds.

The Chancellor, Hon. T. M. McConnell, fixed the rights of the parties by decree, and ordered a sale of the lands. There was no dissatisfaction with or appeal from the decree for sale, but none of the several parties interested were satisfied with the decree fixing their rights *inter sese,* and all have appealed, and assigned errors, which raise simply the question as to the proper distribution of the proceeds of the lands when they shall be sold.

The facts, so far as necessary to be stated, are found to be as follows: About 1882 E. F. Colyar, who resided at Tracy City, Grundy County, conceived the idea of buying up a large number of tracts of mineral lands, with a view of consolidating them into one body, and enlisting capitalists in their development. Soon after he began operations, he associated with him E. O. Nathurst and W. D. and N. B. Spears, the first named being very familiar with the mineral wealth of the region, and the two latter being attorneys, familiar with the titles of the lands in that section. A. S. Colyar soon became interested, and furnished some money to be used in the purchase of the lands, $1,500 of which he obtained from Richardson, Fall, and Loughmiller, upon an agreement with said A. S. Colyar that, to the extent of the money furnished, they were to have an interest in the lands.

Still the parties could not command the necessary funds to carry out their designs; and on June 21, 1884, Benton and John McMillin accepted a written proposal from E. F. Colyar and E. O. Nathurst to go into the enterprise, upon terms that they were to furnish not exceeding $20,000 to pay for the lands, and have a first mortgage on the lands until repaid. The profits were then to be equally divided. This written proposition was afterward lost sight of, and the mortgage was never executed, nor does it appear that the other parties interested knew of the writing; but they co-operated upon a basis substantially as the writing indicated.

Failing to obtain the necessary means to pay for the lands, a considerable quantity of which had been contracted for and options taken, other parties were let in, among them Wm. Morrow, who contributed some money toward the enterprise. John and Benton McMillin, A. S. Colyar, E. F. Colyar, and E. O. Nathurst each had made contributions, but a large deficit remained. A. S. Colyar, Benton and John McMillin, and Wm. Morrow were attempting to enlist capital in the enterprise, while E. F. Colyar, Nathurst, and Spears were buying up and securing the lands. Matters dragged along until the latter part of 1885; and in the meantime several tracts of land were lost for want of funds to pay for them.

A. S. Colyar, at this juncture, interested Max Sax, and, through Mr. Sax, certain New York

parties were induced to furnish the money to complete the purchase of the lands, all parties consenting thereto or acquiescing therein. The money was paid over by the New York parties to Sax, as trustee, and it was agreed they should, in consideration therefor, have a half-interest in the lands. The lands were to be, and were, conveyed to Sax, trustee, in trust. About three months after this money was paid over to Sax and applied to the payment of the lands already bargained for, containing about 12,000 acres, the New York parties proposed that more land be purchased; and it was agreed between them and A. S. Colyar to increase the holdings to 25,000 acres, to be paid for one-half by the New York parties and one-half by A. S. Colyar and such parties as he might enlist with him, called the Tennessee parties. All agreed to this, but E. F. Colyar and E. O. Nathurst and the McMillins declined to furnish any funds for the second purchase.

The titles to these lands were also to be taken to Sax, as trustee, and he was to convey the same to a corporation so soon as formed, which was to have a capital stock of $1,000,000, and to issue $1,000,000 of bonds, of which $200,000 of stock and the same amount of bonds should be given for these lands. Sax was to have ten per cent. for promoting the scheme, and the remainder should be divided between the parties as their interests might appear. About 11,000 acres of land were bought and conveyed to Sax, part of them

in trust and part to him as an individual, but it is conceded they are all held subject to the trusts. The charter for the corporation was obtained, the stock was subscribed, and a site was selected for the erection of a furnace.

But several of the New York parties died, the price of iron declined, and the entire enterprise collapsed, and was abandoned. Subsequently McMillin, Morrow, and Duncan bought out nearly all of the New York parties. Morrow bought out Duncan's interest, and then assigned his interest to J. L. Gaines, trustee.

N. B. Spears withdrew from the enterprise before the New York parties came in, and by suit in the United States Circuit Court, at Chattanooga, had his interest fixed by decree at one-eighth interest in the Spring tract of 5,000 acres, all of which was conveyed to Sax, trustee; and N. B. Spears' interest is conceded to be settled in that way.

These bills were then filed to declare the rights of the parties, and to sell the lands for division.

The Chancellor held—

*First.*—That the deed dated February 27, 1886, made by E. F. Colyar to Max Sax, trustee, conveying the "first" body of 12,000 acres of land, be canceled.

*Second.*—That the title to all said 12,000 acres of land be divested out of Sax, and invested in E. F. Colyar, E. O. Nathurst, and W. D. Spears equally—excepting the one-eighth of the "Spring" tract, which was decreed to N. B. Spears.

16—8 P

*Third.*—That A. S. Colyar, Benton McMillin, John McMillin, and Dr. Morrow have a lien on said land to secure the payment of the money they had contributed to pay for the lands.

*Fourth.*—That the "New York parties" have a similar lien for the money they contributed towards paying for the land.

*Fifth.*—That this lien mentioned in paragraph four inured to Benton McMillin and Dr. Morrow (or Gaines, trustee), to the extent of the interests of the New York parties which they had purchased.

*Sixth.*—That all the other lands—the 11,000 acres, called the "second" deed lands—were held by Sax in trust for the benefit of the "New York parties" and their assigns, and such other persons as furnished money to pay for them.

*Seventh.*—That the beneficiaries mentioned in paragraph six were entitled to the lands *in proportion to the money furnished by them and used* in paying for the said "second" lands.

*Eighth.*—That E. F. Colyar, E. O. Nathurst, W. D. Spears, and N. B. Spears furnished no money to pay for the second lands, and had no interest therein.

*Ninth.*—That they should have a lien thereon to secure the payment of reasonable compensation for their services in buying up the lands, and such expenses as they incurred in so doing.

*Tenth.*—That Fall, Richardson, and others should be subrogated to all the rights of A. S. Colyar against the "first" lands to the extent of $1,500.

*Eleventh.*—That they (Fall, Richardson, *et al.*) were entitled to be subrogated to the rights of A. S. Colyar in the "second" lands, and take an *interest* therein out of his share (if any he should appear to have on the taking of the account or deed) to the extent that $500 would entitle them as against said Colyar.

*Twelfth.*—That J. L. Gaines, trustee, take the interest of Wm. Morrow for the benefit of creditors.

*Thirteenth.*—That all the lands be sold in one body upon certain terms. It is not necessary to state the terms, as this part of the decree was rendered by consent, and from it there is no appeal.

*Fourteenth.*—It was further decreed that an account be taken (1) to ascertain the liens declared on the "first" lands; (2) the names of the parties who furnished the money to pay for the "second" lands, and the amounts respectively contributed; (3) the liens declared on the second lands; and (4) the taxes due and unpaid.

*Fifteenth.*—That the proceeds of sale be distributed as the rights and interests of the parties had been decreed.

The quantity of land secured was about 23,-000 acres, 12,000 in the first purchase and 11,000 in the last purchase. The original cost, not estimating labor and services rendered in their purchase, was about $29,000, and the estimated value now is about $186,000. So that, of the amount the Court is called upon to distribute, about $157,-

000 is profit. There is also a balance in the hands of the trustee of $3,000 or more.

There is much controversy as to the amounts of cash contributed, services rendered, and labor performed by the parties *inter sese;* and it is insisted that the amount contributed by A. S. Colyar was merely a loan to his brother, E. F. Colyar, a view which this Court cannot, under the facts in this case, adopt. Very able arguments have been made, and very elaborate briefs have been filed, on behalf of all the parties. It has been pressed upon the Court with zeal and much ability that the doctrine of a resulting trust applies to the first body of lands in favor of E. F. Colyar, E. O. Nathurst, and W. D. Spears, and that the title to the lands should be revested in them, charged with the repayment of the purchase-money; and also that the same principle applies to the second body of lands in favor of the New York parties, charged with a like incumbrance. We do not think either is a case of resulting trust, but that the transaction of the parties was a venture in each case in an enterprise for their joint benefit; and the scheme of stocking and bonding the lands having failed and been abandoned, the property in each instance should be divided substantially upon the principles of law applicable to partnership transactions.

The fact, if such it be, and we do not now determine the same, that A. S. Colyar and his Tennessee associates in the second purchase did not

furnish their one-half of the funds required and used in their purchase does not alter the rule, but such inequalities of payment, if they exist, will be equalized out of the proceeds of sale before the same is distributed. *Gee* v. *Gee*, 2 Sneed, 395, 403; *Rankin* v. *Black*, 1 Head, 658; *Williams* v. *Love*, 2 Head, 84; *Furman* v. *McMillian*, 2 Lea, 121; *Pearl* v. *Pearl*, 1 Tenn. Ch., 207; *Richards* v. *Ginnell*, 50 Am. Rep., 727; *Holmes* v. *McCray*, 19 Am. Rep., 735.

The Court is of opinion that the proceeds of these lands should be distributed, and a decree will be drawn in accordance with the following instructions:

As to the first body of lands—

*First.*—The purchase-money paid for the land will be refunded, without interest, to the parties who contributed it or their assigns.

*Second.*—All taxes upon the lands shall be paid.

*Third.*—Sax, the trustee, upon making a full and satisfactory statement of his trust, may be allowed reasonable compensation for his services if, upon such settlement, he shows himself entitled thereto.

*Fourth.*—One-half the remainder of said proceeds will be paid to the New York parties, or their assigns, to be distributed among them according to the amounts contributed by them respectively.

*Fifth.*—The other half of said remainder will belong to the parties who were interested in said enterprise before the New York parties came into it;

and their half will be distributed among them according to their respective contributions to purchase the lands, whether such contributions were in money or services rendered, as hereinafter indicated. These parties are E. F. Colyar, E. O. Nathurst, W. D. Spears, Benton McMillin, A. S. Colyar, and J. L. Gaines, assignee.

*Sixth.*—To determine these several interests a reference is ordered.

*Seventh.*—In executing this order, the amounts paid by A. S. Colyar will be treated as an investment, and not as a loan.

*Eighth.*—A. S. Colyar will have credit for such amounts as were paid by him out of his own means, and such other amounts as were furnished by other parties through him to be invested in the lands.

*Ninth.*—A. S. Colyar will account to Richardson, Fall, and Loughmiller for the amounts furnished by them to him out of the share thus set apart to him and for his immediate associates in the eighth item; and these parties will be entitled to share in the interest of said A. S. Colyar in the proportion which their contributions bear to the entire amounts furnished by A. S. Colyar.

*Tenth.*—E. F. Colyar, E. O. Nathurst, and W. D. Spears will be entitled to a fair and reasonable allowance for their labor and services in getting up and buying the lands; and the amounts thus allowed them, when ascertained, will be treated and placed on the same basis as the money con-

tributions, and will increase their interest in the land, beyond the money contributed, to the amount thus allowed them for their services.

*Eleventh.*—The value of the one-eighth interest of N. B. Spears in the Spring tract of 5,000 acres will be charged up against, and be paid out of, the share and interests of E. F. Colyar, E. O. Nathurst, and W. D. Spears.

The proceeds of the second body of the land will be distributed as follows:

*First.*—All taxes on the lands will be paid.

*Second.*—Such compensation shall be paid to E. F. Colyar, E. O. Nathurst, W. D. Spears, and Max Sax, trustee, as they may show themselves entitled to receive for services rendered by them about the second body of lands, and all actual expenses incurred by them about the same, will be refunded with interest. These amounts will be paid to them as a money compensation, and shall not give them any interest in the lands, but only a right to payment out of the proceeds.

*Third.*—All amounts contributed toward the purchase of these lands will be refunded, without interest, to the parties who furnished the same.

*Fourth.*—One-half the remainder, including the balance in the hands of Sax, trustee, on a full and fair settlement, will belong to the New York parties or their assigns in the proportion *inter sese* of their contributions.

*Fifth.*—The other half will belong to A. S. Colyar and such persons as he may have associated

with him in this second purchase outside of the New York parties, including Richardson, Fall, and Loughmiller, to be distributed between them according to their money contribution toward the second purchase.

*Sixth.*—A reference will be ordered to ascertain the facts necessary to make this distribution.

The decree of the Chancellor is reversed and modified so as to conform to the directions herein given, and the cause will be remanded for further proceedings, and to execute the references ordered, and for a sale of the land. The costs of the cause to date, including costs of the appeal and of this court, will be paid out of the gross proceeds of the lands when sold.